UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW HAMPSHIRE

_____
                                                        )
STEVEN TUCKER                                           )
                                                        )
v.                                                      )        Case No.: 24-cv-00120-JL-AJ
                                                        )
UNITED STATES OF AMERICA                                )
_____)

**AFFIDAVIT OF STEVEN TUCKER
IN SUPPORT OF 2255 PETITION**

I, Steven Tucker, make the following declaration in support of my motion to vacate, set

aside, or correct my sentence under 28 U.S.C. § 2255.

1.      I am the defendant in the above-captioned matter.

2.      I was detained pending trial in this case.

3.      I had numerous disagreements with my attorney before and during trial.

4.      I provided my trial counsel with a long list of potential witnesses that I believe

may be helpful to my defense.  Those witnesses included individuals who I understand have

claimed that certain witnesses at trial were not telling the truth.

5.      I also provided my attorney the name of an individual who I understand was

incarcerated with Morgan and Haley, two of my former girlfriends who both testified against me

at trial.  This witness has said that Morgan and Haley spoke about me, that they were upset I had

dated them both, and that they had an opportunity to coordinate their stories.

6.      To my knowledge my attorney interviewed at most a few of those witnesses, if

any.

7.      I told my attorney here that the discovery in a state case against me included

information that could help my defense at this trial.

8.      I reviewed the discovery in the state case and am familiar with its contents.

9.      The discovery in the state case showed that the Backpage accounts were opened when I was in jail, that a witness had previously recanted charges she pressed against me when she was mad at me, that a witness had previously told the police that I had not trafficked her and that I was just her boyfriend, and that witnesses claimed the police intimidated them by saying they might be charged with a crime.

10.     As part of my plea in the state case I was required to agree that the state could destroy the discovery.

11.     To my knowledge my attorney here did not obtain the discovery from my attorney in the state case.

12.     I asked my attorney to subpoena my jail calls from Valley Street, where I was incarcerated in 2015, and from ACI.

13.     Those calls included helpful statements by trial witnesses.  For example, Haley told me on the phone that no one else can have me.  I interpreted that statement to mean that she was willing to testify falsely to make sure that I remained incarcerated.  She also told me that she had felt threatened by investigating officers who said she might be charged with a crime.

14.     To my knowledge my attorney never subpoenaed those jail calls.  Some of my calls at Valley Street were produced in discovery, but none of my calls from ACI were produced.

15.     I disagreed with my attorney at trial about many issues.  For example, I asked my attorney to object when the government exercised a preemptory challenge to exclude the sole potential Black juror.  I was concerned that the jury was not a jury of my peers because I am Black and none of the jurors were.  My attorney did not object.  My memory is that he said it was a jury of his peers.

- 2 -

16.    My attorney asked the court to exclude any evidence that I was incarcerated during the trial or that I was on parole at the time of the alleged offenses. I agreed with my attorney that this evidence should be excluded. The court granted the motion.

17.    I was therefore surprised and alarmed when my attorney referenced the fact that I was incarcerated during opening argument.

18.    My attorney also asked questions that referenced the fact that I had been incarcerated in the past.

19.    One witness told the jury that I kept an apartment at 92 Walnut Street because I had to for parole.

20.    I wanted to ask the court for a mistrial because the jury had learned that I had been on parole.

21.    My attorney advised me against filing a motion for a mistrial because he did not believe that we would win the motion.

22.    I disagreed with my attorney's advice. I believed there would be no harm in filing a motion for a mistrial. I was very upset that the jury knew I had been on parole, that I was presently incarcerated, and that I had a criminal history.

23.    Although I disagreed, I felt I had no option to file a motion for a mistrial because my attorney said we would not win the motion.

24.    My attorney told the jury during closing argument that I was dealing drugs. My attorney did not discuss that argument with me. Had he done so I would have instructed my attorney to not make that argument.

25.    I did not agree to tell the jury that I sold drugs. I did not want jurors to see me as a drug dealer when they were deliberating in this case. I was willing to plead guilty in state court

when the potential sentence was lower.  But after the federal court rejected a 10-year plea deal I knew I needed to fight every charge at my federal trial.

26.    I did not want to concede guilt on any count.  I did not want to tell the jury that I had sold drugs.  I wanted to make the government prove its case without any help from me.  I wanted to fight all of the charges, even if it was a long shot.  I knew I was facing a sentence much higher than 10 years if I was convicted because the trial court had already rejected a 10 year plea deal.

27.    I was worried that my lawyer's decision to concede that I was dealing drugs would make the jury believe that I was guilty of maintaining a drug-involved premises.

28.    I was also worried that my lawyer's decision to concede that I was dealing drugs made it easier for the government to prove its case on the other charges against me.  The government's theory on the human trafficking charge was that I controlled the complaining witnesses by controlling their access to drugs.  I did not want to concede that important part of the government's theory.  I wanted to argue that the witnesses against me were not telling the truth about any of the charges against me.

29.    I told my trial counsel a number of facts that supported my defense that the witnesses were not telling the truth.  I told him that several witnesses felt police had said they could be charged with a crime to prevent them from testifying.  I understand that those witnesses would have testified that they engaged in prostitution with other trial witnesses and that they knew I was not trafficking those witnesses.  I also told my attorney about a conversation with the government and a car ride with a law enforcement officer that I believe supports the argument that witnesses were intimidated.  My lawyer did not call those witnesses at trial.

- 4 -

30.    I recall stating during an unrecorded conference with the court that I did not agree with my attorney's approach.  I also recall citing *McCoy v. Louisiana* during that conference.

31.    I did not agree to waive my right to require the government to prove my guilt beyond a reasonable doubt.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on __th of April 2025.

Steven Tucker